570 P.2d 100 (1977)
31 Or.App. 201
EMPLOYMENT DIVISION, Ross Morgan, Administrator, Petitioner,
v.
NORTHWEST CHRISTIAN College, Respondent-Cross-Petitioner.
Court of Appeals of Oregon, In Banc.[*]
Argued and Submitted August 18, 1977.
Resubmitted September 16, 1977.
Decided October 17, 1977.
Al J. Laue, Asst. Atty. Gen., Salem, argued the cause for petitioner. With him on the brief were James A. Redden, Atty. Gen., and W. Michael Gillette, Sol. Gen., Salem.
Barry Rubenstein, Eugene, argued the cause for respondent-cross-petitioner. With him on the briefs was Johnson, Harrang & Mercer, Eugene.
Resubmitted In Banc September 16, 1977.
JOHNSON, Judge.
Petitioner appeals from a referee's decision finding that respondent, Northwest Christian College, was not an employer subject to taxes under the Unemployment Compensation Act because of ORS 657.072(1)(a)(B) which provides:
"(1) `Employment' does not include service performed for a nonprofit employing unit if such service is performed:
"(a) In the employ of
"* * *
"(B) An organization which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a church or convention or association of churches * * *."
The college is a nonprofit corporation. Petitioner conceded at the hearing that the college is operated primarily for religious purposes to train students for the ministry of the Christian Church. There was substantial evidence to support the referee's finding that the college is not principally supported by the church because much of its financial support comes from private individuals who "may very well have been members * * * yet the contribution was not * * * through the Christian *101 Church but outside thereof."[1] The issue is whether the referee was correct in concluding that the college is an organization "operated, supervised, [or] controlled * * * by a church * * *."
Petitioner argues that the college is not exempt because it is operated, supervised and controlled by the Board of Trustees rather than by the Christian Church. Under the articles of incorporation the Board has legal control of the college's operation. However, to end the inquiry there would be to substitute form for substance. By the same logic, even though Henry Ford owned the stock of Ford Motor Company, the corporation would be said to be controlled by a board of directors. Correspondingly, under petitioner's theory an organization would be exempt if a church had legal control although there was no control in fact.
The referee made the following finding of fact:
"* * * the leaders of the Christian Church brought plaintiff into existence, plaintiff is guided by the Church and could not survive without its direction and control. Although the Board of Trustees may delegate to the president of plaintiff college the day to day operation of the college, it is the Board of Trustees that sets the policy therefor. The Board is primarily responsible to the Christian Church and it is the Christian Church that has the ultimate say in the operation, supervision and control of plaintiff."
The undisputed evidence is that the primary purpose of this college is to train students for the ministry of the Christian Church and the articles of incorporation so direct. Although the Board of Trustees consists of 25 members, 17 are selected by an original eight. Four of the eight are the state secretaries of the Christian Church who are the church hierarchy, and the four others are appointed by the Christian Church Alumni Association, a majority of whom are Christian Church ministers. Seventeen members of the Board, including the President, are in fact ordained Christian Church ministers, and the remaining Board members are closely associated with the church. Given the primary purpose of the college, the mechanism created was precisely designed to insure that this purpose would be achieved. In short, it was a mechanism to permit the Christian Church to control the college.
The test for exemption in ORS 657.072(1)(a)(B) cannot be analogized to the "direction or control" test applicable in determining whether the person supplying services is an independent contractor exempt under ORS 657.040(1). That test is applied in determining the relationship between the person supplying the services and the employer. ORS 657.040(1) expressly provides that there must be an absence of both legal and de facto direction or control.[2] The question under ORS 657.072 is not the nature of the employment relationship but the nature of the employer. The statute is silent as to whether the test for exemption is for legal or in fact control, or both. We conclude the legislature intended to exempt those organizations which are in fact operated, supervised or controlled by a church.
Affirmed.
TANZER, J., concurs.
SCHWAB, C.J., dissents.
THORNTON, LEE and RICHARDSON, JJ., join in the dissent.
TANZER, J., concurring.
I concur in the majority opinion, but offer some additional comments made pertinent by the dissent  somewhat in the nature of a rebuttal opinion, perhaps.
*102 The first argument of the dissent is addressed to a policy ssue: whether janitors of churches and church-related enterprises are entitled to the same benefits as janitors employed by others. The legislature has resolved the issue by saying that they are not. The fact that we may not be impressed with the wisdom of such a statutory exception does not mean that we should construe it away.[1]
I also concur with the majority as it upholds the administrative decision to look to the fact of control. The legal right to control, advanced by the dissent as the proper test, is one form of actual control. Actual control is the more realistic test for the application of the statutory policy than the technical authority arising from corporate form which, as often as not, is designed to mask reality rather than to reflect it.
Finally, the dissent argues that a de facto test will be hard to apply. Perhaps, but agencies make tough factual judgments every day and we regularly uphold them if they are supported by substantial evidence. Difficulty of fact-finding is not a reason to construe a statute into a different interpretation.
For all these reasons, I concur.
SCHWAB, Chief Judge, dissenting.
This case does not involve any dispute about religious principle, but only the question of whether an employe, be he janitor, groundskeeper or secretary, discharged by Northwest Christian College would be eligible for unemployment compensation. In holding the college is exempt from the Unemployment Compensation Act, the majority denies such benefits to the college's former employes. I would hold the college is subject to the Act, and thereby extend unemployment compensation benefits to its former employes.
The critical facts are simple. The college's Board of Trustees has the sole legal authority to manage and direct the affairs of the college. The Christian Church has no legal authority to operate, supervise or control the Board of Trustees. Nevertheless, the trustees do voluntarily acquiesce in supervision by the Christian Church.
The disputed legal question is the meaning of "operated, supervised [or] controlled * * * by a church" in ORS 657.072(1)(a)(B). The majority interprets this language to mean control in fact, regardless of whether based on any legal authority, and to include the trustees' voluntary subordination to the Christian Church. I would interpret ORS 657.072(1)(a)(B) as requiring that there be a legal right to control; and it being clear that the Christian Church has no such legal right to control the college, I would reverse the referee's decision that the college is exempt from the Unemployment Compensation Act.
The most analogous authority supports my construction. In Journal Pub. Co. v. State U.C. Com., 175 Or. 627, 663, 155 P.2d 570, 585 (1945), the Supreme Court interpreted the phrase "control or direction" in what is now codified as ORS 657.040(1) to mean "the existence of the right or authority to interfere or control." The control-or-direction language in ORS 657.040(1) is synonymous with the supervised-or-controlled language in ORS 657.072(1)(a)(B). Given that the Supreme Court has held the former means the legal right to control, I believe we are bound to place the same interpretation on the latter.
Furthermore, the interpretation of ORS 657.072(1)(a)(B) which I favor  the legal right to control  is relatively easy to administer. By contrast, the majority's interpretation of ORS 657.072(1)(a)(B) as extending to de facto control without legal authority will present administrative difficulties. How much de facto control is required? Are all nonprofit employers connected with religious activities invited to surrender control to a church as a way to gain exemption from Unemployment Compensation Act payroll taxes?
*103 Finally, I find the majority to be inconsistent. Aside from the control issue, ORS 657.072(1)(a)(B) would exempt the college from the Act if it were "principally supported by a church." The college cross-appeals from the referee's finding that it is not. The majority disposes of the issue in a sentence; although most of the contributors to the college are members of the Christian Church, this does not amount to support by a church. But this seems to be de facto church support as much as the de facto church control that the majority relies upon. The majority never explains why support and control are treated differently.
I would reverse and, therefore, respectfully dissent.
THORNTON, LEE and RICHARDSON, JJ., join in this dissent.
NOTES
[*] GILLETTE, J., did not participate.
[1] Respondent cross-appealed contending that there was not substantial evidence to support the referee's finding that the college is not principally supported by the church.
[2] ORS 657.040(1) provides:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the administrator that:
"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact * * *." (Emphasis added)
[1] My concurrence on this issue is limited to the statutory issue and I leave the constitutional issue for resolution when properly raised.